**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| **APRIL LACEY,**<br><br>*Plaintiff,*<br><br>V.<br><br>**UNITED STATES OF AMERICA and MARERLLIS NIX,**<br><br>*Defendants.* | **Civil Action No. 3:23cv466**<br><br><br>**COMPLAINT AND JURY DEMAND** |

TO THE HONORABLE JUDGE OF THE COURT;

Plaintiff April Lacey by and through her attorneys, Beldock Levine & Hoffman, LLP and Kallinen Law PLLC, for her Complaint against Defendants identified herein, allege as follows:

**PRELIMINARY STATEMENT**

1. Marerllis Nix ("Nix"), a former correctional recreation specialist at Federal Medical Center Carswell, in Fort Worth, Texas ("FMC Carswell") in the Northern District of Texas, exploited his position to sexually abuse and sexually harass women who were incarcerated at FMC Carswell in the custody of the United States Federal Bureau of Prisons ("BOP").

2. FMC Carswell is a federal prison which includes housing for incarcerated women with specialized medical and mental health needs.

3. Plaintiff was one of several incarcerated women that Nix sexually abused before he resigned from the BOP in 2021.

4. Nix's recurrent abuse of incarcerated women was obvious to various agents, servants, and employees of BOP, including but not limited to his supervisors and colleagues, who knew of and

1

disregarded Nix's suspicious interactions with women in custody, including obvious violations of FMC Carswell's security and operating protocols.

5.     BOP personnel deliberately ignored alarming warning signs including incarcerated people's sex abuse allegations against Nix. Upon information and belief, before Nix sexually abused Plaintiff, BOP supervisory and managerial employees were aware of prior allegations that Nix had sexually abused an incarcerated person in a BOP prison.

6.     Despite the population of FMC Carswell being composed of especially vulnerable people, women with specialized medical and mental health needs, the BOP transferred Nix to FMC Carswell.

7.     It was only through the deliberate indifference, recklessness, carelessness, gross negligence, and negligence of other BOP personnel, that Nix's abuses could continue.

8.     Defendant Nix was permitted to take incarcerated women to areas of the prison without surveillance cameras, such as his office in the recreation area, and take women from their housing units to his office, without other corrections officers and his supervisors intervening— thereby enabling his ongoing sexual abuse of incarcerated people.

## JURISDICTION AND VENUE

9.     Plaintiffs' claims are predicated upon the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671, et seq., authorizing actions seeking relief against the United States.

10.    This Court has personal jurisdiction over Defendant because a substantial portion of the alleged incidents occurred within the confines of the State of Texas.

11.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(2) and 1402 (b) as a substantial part of the events giving rise to Plaintiffs' claims occurred within the boundaries of this District.

**CONDITIONS PRECEDENT TO THIS LAWSUIT**

12.    Plaintiffs have properly complied with the requirements of 28 U.S.C. § 2675 by presenting Administrative Claims against the United States of America, both of which were received by BOP.

13.    This action is timely brought pursuant to 28 U.S.C. § 2401(b) in that it is begun within six months of BOP's denial of Plaintiffs' Administrative Claims.

**PARTIES**

14.    At all times relevant herein, Plaintiff was an incarcerated person in the care and custody of the federal government, first at FMC Carswell.

15.    In November 2021, Plaintiff was released to a residential reentry center Community Corrections Center Diersen Charities Las Cruces under Residential Reentry Management Center ("RRM") San Antonio Field Office in San Antonio, Texas.

16.    Plaintiff was released from federal custody on or around August 2022 and currently resides in El Paso, Texas.

17.    Defendant United States of America (hereinafter "United States") is the appropriate defendant for Plaintiffs' claims under the FTCA.

18.    Defendant Marerllis Nix was an employee of the United States of America and employed with the Federal Bureau of Prisons. At FMC Carswell, Marerllis Nix was a recreation specialist.

19.    At all times relevant hereto, Defendant United States, acting through the BOP, was responsible for the operation, control, supervision, policy, practice, implementation, and conduct of all BOP matters including at FMC Carswell and was responsible for the hiring, retention, training, supervision, discipline, and conduct of all BOP personnel, including but not limited to the Nix and other BOP employees referenced herein.

3

20. In addition, at all relevant times, United States was responsible for enforcing the rules of the BOP, and for ensuring that BOP personnel obey the Constitution and laws of the United States.

21. The BOP employees referenced herein were agents, servants, and employees of Defendant United States, and acted within the scope of their employment, and were responsible for the day-to-day oversight, supervision, care, custody, and control of incarcerated people confined at FMC Carswell, including Plaintiffs.

## JURY DEMAND

22. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury on all issues and claims in this action that are so triable.

## STATEMENT OF FACTS

23. During her incarceration, Plaintiff was under the custodial care, supervision, and control of the agents, servants, employees, and independent contractors of Defendant United States and/or the BOP and/or BOP employees, including those named herein.

24. As a matter of both State and Federal law, Defendant had an absolute non-delegable duty to see that incarcerated people in their custody receive adequate custodial care and supervision.

25. Correctional personnel, including Nix, acting as agents for BOP, had the responsibility to maintain the safety, health, and well-being of incarcerated people and to prevent incarcerated people such as Plaintiffs from being subjected to undue harm.

26. Correctional personnel abjectly failed to carry out this responsibility.

27. FMC Carswell associate wardens, executive staff, department heads, supervisors, counselors, professional service providers and prison management were grossly negligent in the

management, supervision, and retention of male correctional officers at FMC Carswell who engaged in the sexual harassment and abuse of women in custody.

28. Plaintiff arrived at FMC Carswell in November 2014.

29. In 2015, William Walker, a BOP employee who worked in administration at FMC Carswell, sexually abused Plaintiff.

30. On or about December 2020 or January 2021, BOP recreation specialist Marerllis Nix twice sexually assaulted Plaintiff while she was sick with Covid-19 and staying in isolation in the indoor recreational area.

31. The evening of the first sexual assault, Nix was supervising Plaintiff and approximately thirty other incarcerated women who had Covid-19.

32. Nix told Plaintiff that he knew she was a "convict," and "convicts" keep their mouth shut.

33. Nix ordered Plaintiff to go to a nearby room connected to Nix's office after the evening count.

34. Plaintiff obeyed this order and saw there was a white board set up with mats set up on the floor.

35. Nix arrived and placed a whiteboard over the windows.

36. Taking advantage of the power and authority conferred on him, and with express or implicit threat of retaliation if she reported the conduct, Nix made offensive, physical contact with Plaintiff, including sexually assaulting Plaintiff through vaginal penetration.

37. The next day, Nix again ordered Plaintiff, who was still sick with Covid-19, to go to a smaller room in that same area.

38. BOP employee Ms. Grischa, a case manager, was present when Nix ordered Plaintiff to go to the smaller room.

5

39.     Indicating she knew Defendant Nix should not be ordering Plaintiff to go to his office alone, Grischa asked Plaintiff why Nix wanted to see her. Grischa did not intervene, however, to prevent Defendant Nix from trapping Plaintiff in an area of the prison where he could sexually abuse her.

40.     In fear of being punished for not complying with Nix's order, Plaintiff went to the smaller room.

41.     Once in the room, Defendant Nix sexually assaulted Plaintiff through vaginal and oral penetration, despite Plaintiff telling Nix "no."

42.     After the assaults, Plaintiff was in fear of further assault and fear of retaliation if she reported.

43.     Upon information and belief, several other incarcerated women received jewelry, including tongue and navel rings, from Nix, which raised suspicions that sexual abuse and harassment was occurring, yet BOP staff failed to comply with mandatory reporting obligations under the Prison Rape Elimination Act ("PREA").

44.     In November 2021, Plaintiff was released to a residential reentry center Community Corrections Center Diersen Charities, which was a facility overseen by a BOP RRM field office.

45.     There, she received a disciplinary ticket which was retaliatory and baseless.

46.     A staff member at the residential reentry center issued a disciplinary ticket to Plaintiff for "being in an unauthorized area with an inmate of the opposite sex."

47.     At this time, Plaintiff had already informed the BOP that two BOP corrections personnel sexually assaulted her.

48.     Upon information and belief, residential reentry center staff were aware that Plaintiff had reported these sexual assaults and were retaliating against her in writing the disciplinary ticket.

49.     Discipline is a common form of retaliation against people in custody who are sexually assaulted, and especially those who report sexual assault, PREA requires retaliation monitoring.

50.     BOP staff and contractors at the residential reentry center should have identified the retaliation and prevented Plaintiff from experiencing further retaliation.

51.     Instead, BOP staff wrongfully punished Plaintiff.

52.     BOP staff received the disciplinary ticket and took away approximately one month of good time credit, resulting in Plaintiff spending another month in BOP custody which was served in home confinement.

53.     As a federal medical center, FMC Carswell is responsible for the care and custody of incarcerated women, including Plaintiff, vulnerable to sexual assault.

54.     Staff at FMC Carswell created and maintained a sanctuary for male correctional employees to sexually abuse women in custody with impunity.

55.     Prior to Nix sexually abusing Plaintiff, other staff at FMC Carswell had sexually abused people in their custody in isolated areas, similar to Defendant Nix's pattern of behavior, but officials did not act to prevent further assaults.

56.     Defendant Nix was a known sexual predator to FMC Carswell's management team and BOP investigative agencies. Upon information and belief, Defendant Nix had been investigated on numerous occasions for sexually abusing people in custody. The FMC Carswell management team and BOP investigative agencies were well aware that people in custody were reluctant to report sexual abuse for fear of retaliation, such as loss of privileges, transfer, disciplinary segregation, and loss of good time credit.

57.    Given this, BOP correctional personnel knew that the existing FMC practices were ineffective in preventing correctional personnel from sexually abusing women in their care and custody.

58.    From 2012 to 2022, FMC Carswell had the highest number of cases of staff sexually abusing women in federal custody, substantiated through federal criminal prosecution, or BOP Office of Internal Affairs investigation. The number of victims totaled twenty-two, which is substantially higher than other federal correctional facilities that house women. The only federal prison to nearly match FMC Carswell in number of victims is FCI Dublin, a federal prison that infamously hosted a "rape club" of correctional officers.

59.    Since 1997, at least 12 correctional personnel at FMC Carswell have been convicted of sexual abuse that occurred at FMC Carswell.

60.    In 2004, a jury found correctional officer Michael Lawrence Miller guilty of 5 counts of assault, abusive sexual contact with a ward, abusive sexual contact, sexual abuse of a ward, and aggravated sexual abuse.

61.    In 2008, an FMC chaplain was sentenced to four years in prison for sexually abusing women in custody.

62.    From 2014 to 2018, FMC Carswell had the highest rate of sexual assault allegations against staff at any federal women's prison, with at least thirty-five women at Carswell reported that a staff member had sexually assaulted them.

63.    From 2012 to 2021, the BOP Office of Internal Affairs substantiated at least sixteen cases of BOP staff sexually abusing women incarcerated at FMC Carswell, almost all before Nix assaulted Plaintiff.

64.     In 2016, BOP employee Matthew McGaugh began sexually abusing an incarcerated woman, C.D., who was in custody.

65.     BOP employee McGaugh was a case manager and committed sexual abuse when he had called C.D. into his office to discuss her mental health treatment plan.

66.     McGaugh sexually abused his victim in his office in a similar manner as Nix sexually abused Plaintiff—by putting a black piece of paper over the door window.

67.     C.D. reported him and faced swift retaliation.

68.     Other BOP officers called C.D. a "snitch" and a liar, would make her late for family visits, ransacked her locker, and kicked her bed at night.

69.     After filing an administrative complaint of retaliation, C.D. was transferred suddenly and not allowed to take her paperwork.

70.     Following this incident BOP supervisory official and other staff did not protect Dudley from retaliation or properly train and supervise BOP staff, which resulted in women in custody, including Plaintiff, being afraid to report sexual abuse.

71.     In March 2020, an incarcerated woman at FMC Carswell made a complaint that a corrections officer there had sexually assaulted her, and that officer remained on the unit.

72.     In 2021, Defendant Nix's supervisor—Lieutenant Luis Curiel—sexually abused 3 women in isolated areas of the prison, including a staff elevator and stairwell next to the elevator.

73.     In June or July 2021, a staff member reported Curiel to administrators.

74.     Curiel was allowed to remain at work and sexually assault other incarcerated women in his custody until October 2021.

75.     The staff member who reported Curiel was retaliated against and terminated.

9

76.    Curiel plead guilty to two counts of sexual abuse of and admitted in the criminal prosecution that he had sexually abused three women in custody at FMC Carswell.

77.    One BOP staff member who had worked at FMC Carswell recently described the prison as "the perfect place for sexual misconduct." The staff member remained anonymous for fear of retaliation.

78.    The culture of abuse at FMC Carswell perpetuated by BOP supervisory and non-supervisory staff caused Plaintiff to be sexually abused.

79.    Before Nix abused Plaintiff, a BOP correctional personnel at FMC Carswell, William Walker, sexually assaulted Plaintiff.

80.    After another incarcerated woman reported that a staff member had abused her previously investigators correctly guessed that Walker was the staff member.

81.    Rather than terminate William Walker, the BOP moved him from FMC Carswell and promoted him to the position of Correctional Institution Administrator at a BOP facility in Texarkana.

82.    Given Plaintiff's history of sexual abuse by staff, Plaintiff was extremely vulnerable to further abuse from Nix, and BOP staff failed to protect her and follow mandatory PREA regulations.

83.    Correctional personnel at FMC Carswell were aware that Plaintiff had a history of being sexually abused before coming into BOP custody, making her more vulnerable to sexual abuse in custody.

84.    On information and belief, Defendant Nix confessed to sexually assaulting Plaintiff.

85.    On information and belief, after Defendant Nix confessed to sexually assaulting Plaintiff, a BOP employee told Plaintiff that he believed she was targeted because she was a victim of prior sexual abuse.

86.    Supervisors and other correctional personnel at FMC Carswell retaliated against women who came forward to report correctional staff for sexual assault by placing them in the SHU (special housing unit)—a housing unit with conditions akin to solitary confinement—and/or transferring them to another BOP facility.

87.    FMC Carswell is a federal medical center and prison for women exclusively.

88.    The BOP is aware that women entering prison, including Plaintiff, are more likely to have experienced sexual abuse prior to incarceration and in prison.

89.    It is a federal crime for BOP staff to knowingly engage in sexual acts with people under their custodial, supervisory, or disciplinary authority.

90.    The BOP purports to have a zero-tolerance policy for all forms of sexual activity, including abuse and harassment, as the PREA requires.

91.    The BOP's stated mission is to "protect public safety by ensuring that federal offenders serve their sentences of imprisonment in facilities that are safe, humane, cost efficient and appropriately secure."

92.    Despite its duty to care for women in custody and PREA, the BOP has instead created and maintained a sanctuary for male correctional employees to sexually assault and abuse women in custody. This sexual abuse is rampant, systemic, and largely unchecked due to a BOP culture that tolerates the abuse, covers up abuse, and retaliates against those who report sexual abuse.

93.    This misconduct was recently reported by the U.S. House of Representatives for the Committee on Oversight and Government Report, which concluded that prison officials' misconduct is "largely tolerated or ignored altogether." According to the report, prison officials deemed responsible are often "shuffled around, commended, awarded, promoted or even allowed to retire with a clean record and full benefits before any disciplinary action could apply."[1]

94.    In 2022, the U.S. Senate Permanent Subcommittee on Investigations, Committee on Homeland Security and Governmental Affairs conducted an 8-month long bipartisan investigation concluding in a report, *Sexual Abuse of Female Inmates in Federal Prisons*[2], released on December 13, 2022.

95.    PREA requires that the BOP provide reporting mechanisms for people in custody to make reports of sexual abuse.

96.    The subcommittee found system-wide failings of the BOP in protecting women incarcerated in federal prison.

97.    In several BOP prisons between 2012 and 2022, BOP staff wielded power and authority to sexually abuse numerous women under their custodial control.

98.    The subcommittee found the BOP's failure to enact PREA resulted in BOP staff sexually abusing numerous women.

99.    For instance, PREA audits consistently showed BOP prisons meeting or exceeding PREA standards, despite evidence of a culture of sexual abuse evident from numerous BOP staff being

---

[1] https://republicans-oversight.house.gov/wp-content/uploads/2019/01/Memo-to-Chairman-Russell-re-BOP.pdf.

[2] Sexual Abuse of Female Inmates in Federal Prisons, Staff Report Permanent Subcommittee on Investigations United States Senate, (Dec. 13, 2022), https://www.hsgac.senate.gov/imo/media/doc/2022-12-13%20PSI%20Staff%20Report%20-%20Sexual%20Abuse%20of%20Female%20Inmates%20in%20Federal%20Prisons.pdf.

criminally prosecuted for sexual abuse of people in custody within those same BOP prisons that allegedly met standards.

100.    The BOP turned a blind eye and allowed the flawed PREA audits to continue—not preventing or exposing sexual abuse but only concealing it and suppressing reporting.

101.    The subcommittee surmised that given the fear of retaliation, and the apathy of BOP and DOJ officials at all levels to sexual abuse, the extent of abuse in BOP facilities is likely significantly wider.

102.    The subcommittee found the BOP did not systemically analyze PREA complaint data, and BOP Office of Internal Affairs ("OIA")—which investigates employee misconduct—has a backlog of 8,000 misconduct cases, leaving BOP staff employed and empowered to sexually abuse more women in their custody.

103.    The BOP failures have led to multiple BOP employees admitting in sworn statements that they sexually abused people in federal custody but being permitted to retire with benefits.

104.    To enact PREA and prevent sexual abuse, the BOP is required to train supervisory officials on preventing sexual abuse. These statements show high-level officials were not trained and not protecting people in their custody and care.

105.    In October 2022, Inspector General Horowitz issued a memorandum[3] to BOP Director Peters notifying her of "serious concerns" with how BOP handles investigations of misconduct.

106.    The Office of the Inspector General discovered that the BOP OIA has a general practice of refusing to rely on testimony of people who are incarcerated to make misconduct findings and

---

[3] Department of Justice Office of the Inspector General, *Management Advisory Memorandum 23-001 Notification of Concerns Regarding the Federal Bureau of Prisons' (BOP) Treatment of Inmate Statements in Investigations of Alleged Misconduct by BOP Employees*, (October 2022), https://oig.justice.gov/sites/default/files/reports/23-001.pdf.

13

take disciplinary action, unless there is independent evidence, such as video, forensic evidence, or an admission from the employee.

107. Such practices have resulted in BOP employees receiving little to no discipline for sexual abuse, allowing them to continue abusing more people in their custody until allegations are finally substantiated.

108. This practice is a violation of PREA.

109. In more egregious cases, the BOP had clear evidence of sexual abuse but viewed behavior as only an inappropriate relationship, despite PREA's zero tolerance policy.

110. The BOP has an obligation and duty to protect people incarcerated in federal prisons from sexual abuse.

111. People in custody have a constitutional right to be free from sexual abuse at the hands of BOP staff, as this is cruel and unusual punishment.

**<u>FIRST CAUSE OF ACTION</u>**
**NEGLIGENCE**
**Federal Tort Claims Act**
(*against the United States*)

112. Plaintiff adopts and incorporates by reference all preceding paragraphs as if said paragraphs are set forth fully herein.

113. Defendant United States, having a legal duty to Plaintiff as a prisoner in its care and custody to provide for the protection of inmates (18 U.S.C.S. § 4042), breached that duty in negligently operating and managing FMC Carswell by the above-described acts.

114. BOP employees breached their duties to Plaintiff by providing Defendant Nix with unrestricted and unsupervised one-on-one access to Plaintiff while incarcerated at FMC Carswell despite knowledge of his past sexual abuse and harassment of people in custody.

115.    FMC Carswell management team and other correctional employees at FMC Carswell breached their duties to Plaintiff under PREA as follows:

    a.    Section 115.61 – failing to report suspicion of sexual abuse as it related to the conduct of Defendant Nix with incarcerated people including Plaintiff.

    b.    Section 115.76 – failing to discipline staff, including Defendant Nix, for sexual misconduct.

116.    The FMC Carswell management team and the BOP investigative agencies breached their duties to Plaintiff under BOP Program Statements as follows:

    a.    Section 3340.11/12 – failing to report the sexual abuse of Plaintiff and other people in custody by Defendant Nix allowing him to continue his criminal assaults and harassment; failing to stop the sexual abuse of people in custody by Defendant Nix after notice and knowledge of prior assaults; and failure to train Defendant Nix on the Program Statements and procure his signature certifying same.

    b.    Section 5324.12—failing to report the sexual abuse of Plaintiff and other people in custody by Defendant Nix; failing to timely intervene in response to allegations that Defendant Nix had sexually abused people in custody.

117.    As a direct and proximate cause of the negligence outlined above, the FMC Carswell management team, BOP investigative agencies, other correctional employees at FMC Carswell, and Defendant Nix caused damage to Plaintiff including psychological trauma, emotional distress, depression, physical trauma and pain and suffering.

118.    As a result of the negligence of Defendant United States, its agents, servants and employees, as aforesaid, Plaintiff has suffered extreme emotional harm, physical injury, loss of enjoyment of life, and lost liberty.

## THIRD CAUSE OF ACTION
### Sexual Assault
### Texas Common Law
### (*against Defendant Nix*)

119.    Plaintiff adopts and incorporates by reference all preceding paragraphs as if said paragraphs are set forth fully herein.

120.    Defendant Nix intentionally and knowingly subjected caused the penetration of Plaintiff's sexual organs without her consent.

121.    Defendant Nix intentionally and knowingly caused the penetration of Plaintiff's mouth with his sexual organ without her consent.

122.    As a result of Defendant Nix's conduct, Plaintiff suffered extreme emotional and physical harm.

## FOURTH CAUSE OF ACTION
### False Imprisonment
### Federal Tort Claims Act
### (*against the United States*)

123.    Plaintiff incorporates by reference the allegation set forth in all preceding paragraphs as if fully set forth herein.

124.    When employees of the United States detained and sanctioned Plaintiff in retaliation for her assisting in the investigation of their colleague, Defendant Nix, they used their positions of power to exercise force over Plaintiff.

125.    Employees of the United States exercised this force for the purpose of unlawfully confining Plaintiff.

126.    The conduct of employees of the United States caused Plaintiff to be deprived of her physical liberty for a period of approximately one month.

127.    The actions of employees of the United States were wrongful as a tort under the laws of the State of Texas, and the law of the United States through the Federal Tort Claims Act, and without justification under any applicable federal statute or rule.

128.    Plaintiff is entitled to relief against Defendant United States because when employees of the United States falsely imprisoned Plaintiff, they were acting under the color of law and as agents, servants, and employees of Defendant United States, acting within the course and scope of their employment, and under the supervision of the United States.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff April Lacey respectfully requests that judgment be entered against Defendants as follows:

a. An award of compensatory damages for all past and future psychological and personal injuries, including but not limited to severe psychological and emotional injury, physical pain, fear, embarrassment, humiliation, shame, extreme emotional distress, loss of quality of life, violation of physical integrity, lost earning capacity, economic damages for all reasonable medical and counseling expenses, and other harm, in an amount to be determined at trial;

b. An award of punitive damages in an amount to be determined at trial;

c. An award of attorney's fees and costs to the fullest extent permitted by law; together with

d. Such other and further relief as this Court may deem just and proper.

Dated:        December 27, 2023

Kallinen Law PLLC

*/s/ Randall L. Kallinen*
Randall L. Kallinen
State Bar of Texas No. 00790995
511 Broadway Street
Houston, Texas 77012
Telephone:  713/320-3785
FAX:          713/893-6737
E-mail:       AttorneyKallinen@aol.com

BELDOCK LEVINE & HOFFMAN, LLP
99 Park Avenue, PH/26th Floor
New York, New York 10016

David B. Rankin (pro hac vice pending)
Regina Powers (pro hac vice pending)
Telephone:    212-277-5825
E-mail:        drankin@blhny.com
                 rpowers@blhny.com